

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AB:SMF
F. #2023R00842

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 13, 2023

By E-mail

The Honorable Lois Bloom
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Kareem Browning and Bennie Johnson
                  Magistrate Docket No. 23-995

Dear Judge Bloom:

        The government respectfully submits this letter seeking the pretrial detention of Kareem Browning and Bennie Johnson, whose initial appearances are scheduled before Your Honor later today, November 13, 2023. The defendants are charged in the above-referenced complaint with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a).

        As set forth in more detail below, the defendants pose a danger to the community and a risk of flight and should accordingly be detained pending trial. The defendants committed these crimes after convictions for serious felonies and in violation of their conditions of state parole. Furthermore, the defendants pose an intolerable risk of flight. If convicted of the instant charges and with applicable enhancements, the defendants are likely to face substantial United States Sentencing Guidelines ("Guidelines") ranges. In Browning's case, he faces a Guidelines range of approximately 110 to 137 months. In Johnson's case, he faces a Guidelines range of approximately 97 to 121 months. Should the defendants be indicted for additional offenses related to the instant conduct, their Guidelines range would increase even further and each would be exposed to a mandatory minimum sentence of 7 years' imprisonment to run consecutively to the sentence imposed on other counts. These potential lengthy sentences, in light of the strong evidence of guilt, gives both defendants a strong incentive to flee pending trial.

I.   Background

As detailed in the complaint and captured on video surveillance footage, on November 5, 2023, at approximately 9:40 p.m., four men entered a smoke shop in Brooklyn, New York located in a strip mall that engages in interstate commerce.  Two of the perpetrators acted as lookouts while the defendants—each of whom have prior felony convictions for violent robbery offenses—pointed loaded firearms at a store clerk.  While brazenly holding the clerk at gunpoint, the defendants stole valuable marijuana and marijuana-related products.  Surveillance cameras in the store captured the armed robbery, as shown in the photographs below:







Despite being restrained by one of the defendants, the store clerk was able to message an associate to call 911. Police officers arrived shortly thereafter and while the defendants were still at the store; the two lookouts fled the scene before they could be apprehended and remain at large. When the officers entered, the defendants were trapped in the store's basement and wisely decided to lay on the floor with their hands behind their backs. The store clerk identified the defendants and alerted the officers to the two firearms. A subsequent search of the basement led to the recovery of two 9 mm pistols: one loaded with six rounds of ammunition and another loaded with nine rounds of ammunition.

For this conduct, the defendants are charged with Hobbs Act robbery conspiracy.

II.     Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community[.]"  18 U.S.C. § 3142(e).  A finding of dangerousness must be supported by clear and convincing evidence.  See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995).  A finding of risk of flight must be supported by a preponderance of the evidence.  See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); see also United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'"  United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

The Bail Reform Act lists four factors to be considered in the detention analysis, whether for risk of flight or dangerousness: (1) the nature and circumstances of the crimes charged; (2) the history and characteristics of the defendant; (3) the seriousness of the danger posed by the defendant's release; and (4) the evidence of the defendant's guilt.  See 18 U.S.C. § 3142(g); see also United States v. Jacobson, 502 F. App'x 31, 32 (2d Cir. 2012).

Where the evidence of guilt is strong, it provides "a considerable incentive to flee."  United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993); see also United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (where "the evidence against defendants is strong, the incentive for relocation is increased").

Additionally, the possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight.  See Jackson, 823 F.2d at 7; United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses whose maximum combined terms created potent incentives to flee).

Under the Bail Reform Act, the government may proceed by proffer.  Ferranti, 66 F.3d at 541; see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (explaining that the government is entitled to proceed by proffer in a detention hearing).  Furthermore, "[t]he rules of evidence do not apply in a detention hearing."  Ferranti, 66 F.3d at 542.

4

III.   Discussion

For the reasons described below, the defendants endanger the community and pose a significant flight risk if released pending trial. No condition or combination of conditions will ensure their appearance before the Court and the safety of the community. Thus, a permanent order of detention should be entered.

A.   Nature and Circumstances of the Crime

As set forth in the Complaint and described above, the defendants conspired to commit and committed an armed robbery that took place near local businesses. The defendants used terrifying tactics during the robbery, including pointing loaded guns directly at the store clerk and lunging over a counter at her. The defendants pinned the clerk down while robbing the store of valuable marijuana and marijuana-related products. Committing a gunpoint robbery on its own is extraordinarily dangerous. Doing so in a store frequented by community members shows a wanton disregard for the dangers inherent in such conduct. Further, in this case, there can be no doubt that the defendants' actions traumatized the store clerk as one of the defendants put a gun to her head and forced her to the ground, suggesting that she could have been shot or killed had she failed to comply with the defendants' orders.

B.   History and Characteristics of the Defendants

In evaluating the appropriateness of pretrial detention, the Court should consider the defendants' criminal history and characteristics, which weigh heavily in favor of pretrial detention: both defendants have been previously convicted of violent conduct and are on either currently on parole or probation.

Further, while committing the instant armed robbery, both defendants "fail[ed] to comply with the most basic condition of supervision—ceasing criminal activity—[which] shows that [they] cannot be trusted to abide by conditions of pretrial release no matter how strict." United States v. Lynch, No. 20-CR-202 (LAP), 2020 WL 2145363, at *3 (S.D.N.Y. May 5, 2020). Indeed, Kareem Browning committed the instant offense less than a month after being placed on probation for assaulting an elderly woman.

   i.   Kareem Browning

Kareem Browning has a significant violent criminal history, including eleven total arraigned arrests resulting in several violent felony convictions, a pending indictment for a violent felony, a youthful offender adjudication, and a juvenile delinquency adjudication. Additionally, Browning was recently placed under the state probation supervision. Browning's criminal history includes:

- On July 11, 2023, Browning was arrested and charged with criminal possession of a weapon in the second degree. In that case, Browning – together with his co-defendant in this case, Bennie Johnson – while at a playground attached to a public school, brandished a .38 caliber revolver loaded with two rounds at a 24-

5

year-old women and the woman's child.  This case is still pending in New York State court.

- On September 16, 2022, Browning was arrested and charged in New York State with acting in a manner injurious to a child under 17 and criminal possession of stolen property in the fifth degree.  Under the terms of a negotiated plea, Browning pled guilty and was sentenced to 364 days' imprisonment.

- On February 23, 2022, Browning was arrested and subsequently indicted in New York State for assault in the second degree.  In that case, Browning assaulted the 68-year-old stepfather of the woman he was dating.  Browning punched the victim, who wore a prosthetic leg, in the face.  The victim sought treatment at a hospital for his injuries.  Under the terms of a negotiated plea agreement, on October 20, 2023 –less than a month ago – Browning pled guilty to assault in the third degree.

- On February 12, 2018, Browning was arrested and subsequently indicted in New York State for robbery in the first degree.  In that case, Browning and another individual robbed a stranger on the street.  The victim was punched multiple times in the head and his wallet and phone were stolen.  The victim suffered a broken nose.  Under the terms of a negotiated plea agreement, Browning pled guilty to robbery in the second degree and was sentenced to 42 months' imprisonment followed by five years of post-release supervision.

- On March 16, 2017, Browning was arrested and subsequently indicted in New York State for robbery in the second degree.  In that case, Browning and two others robbed a stranger on the street.  The victim was punched and kicked multiple times in the head and body before his wallet and phone were stolen.  Under the terms of a negotiated plea agreement, Browning pled guilty to robbery in the second degree and was sentenced to three years' imprisonment followed by five years of post-release supervision.

  ii. <u>Bennie Johnson</u>

Bennie Johnson also has a significant violent criminal history, including four total arraigned arrests resulting in one violent felony conviction, a pending case involving a violent felony and a youthful offender adjudication.  Additionally, Johnson is currently under post-release supervision.  In addition to the July 11, 2023 incident described above, Johnson's criminal history includes:

- On June 29, 2015, Johnson was arrested and subsequently indicted in New York State for robbery in the first degree.  In that case, Johnson was charged with three separate robberies.  First, on May 29, 2015, Johnson approached a woman from behind, wrapped his arm around her neck and forced her to the ground.  Johnson

6

demanded the woman victim's property while stating that he had a gun. Johnson took the victim's handbag and cell phone. Second, on June 1, 2015, Johnson followed another woman into her apartment building. When the victim was about to enter the elevator, Johnson wrapped his arm around her neck and pushed her to the floor. Johnson took the victim's purse and threatened to shoot her if she called the police. Third, on June 29, 2015, Johnson pushed an elderly woman to the ground and attempted to take her purse. Johnson punched the woman in the face repeatedly. Under the terms of a negotiated plea agreement, Johnson pled guilty to robbery in the first degree and was sentenced to seven years' imprisonment. Johnson was paroled on June 23, 2022 and remains on parole until June 23, 2027.

- On October 23, 2010, Johnson was arrested and subsequently indicted in New York State for robbery in the first degree. On April 15, 2011, Johnson was adjudicated a youthful offender and was sentenced to one year imprisonment.

C. Risk of Flight

The defendants also pose a significant risk of flight if released. "When faced with the possibility of a significant prison term, defendants have a strong incentive to flee." United States v. Edwards, 2021 WL 796089, at *2 (E.D.N.Y. Mar. 2, 2021). If convicted of the instant charged offense, defendant Browning will face a Guidelines range of approximately 110 to 137 months' imprisonment and defendant Johnson will face a Guidelines range of approximately 97 to 121 months' imprisonment. Should they be indicted for a substantive Hobbs Act robbery and brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c), they face a Guidelines range of 70 to 87 months' imprisonment for defendant Browning and 57 to 71 months' imprisonment for defendant Johnson, and a mandatory minimum consecutive sentence of 7 years' imprisonment. The defendants have spent considerable time incarcerated and know how long that time can be, giving them tremendous incentives to flee. In fact, Browning on two separate occasions in New York State court failed to appear for court appearances in connection with a robbery and a bench warrant was issued for him both times. In both instances, Browning had to be brought before the court in custody.

The Second Circuit has held that the possibility of a severe sentence can establish flight risk. See, e.g., United States v. Scali, 738 F. App'x 32, 33 (2d Cir. 2018) ("The court reasonably determined that [the defendant]'s Guidelines range of 87-108 months' imprisonment was significant enough to provide an incentive to flee."); see also United States v. Khusanov, 731 F. App'x 19, 21 (2d Cir. 2018 ("[A] district court does not clearly err in concluding that a defendant facing a potentially lengthy prison sentence possesses a strong motive to flee.").

D. Seriousness of the Danger to the Community

A gunpoint robbery in a public place leaves law-abiding citizens fearful of living, working, shopping, and even walking around in their neighborhood for fear of being

7

victimized by violent crime.  And with good reason.  Here, an innocent store clerk was threatened by the defendants who pointed two loaded guns in her direction and forced her to the ground.  Hardworking store owners and employees are entitled to work in places where they need not fear for their lives.  Their livelihood depends upon community members feeling safe to patronize their local shops.  Further, in this case, there can be no doubt that the defendants' actions undoubtedly traumatized the store clerk who likely feared that she could have been shot or killed if she failed to comply with the defendants' orders.

Moreover, the defendants' conduct indicates that they have access to firearms, which both defendants are barred from possessing as convicted felons.  Furthermore, both defendants were either on parole or probation status, neither of which deterred them from committing a brazen armed robbery.  There is no reason to believe they would be deterred from doing so again on pretrial supervision by this Court.  Thus, both defendants clearly pose a risk of danger to the community.

E. Strength of the Evidence

The evidence against both defendants is strong.  The government intends to prove their guilt at trial using, among other things, video and photographic evidence capturing their criminal conduct, witness testimony, and physical evidence.  In fact, the defendants were arrested by the responding officers while the defendants were still at the scene of the robbery.

IV. Conclusion

For the reasons set forth above, the government respectfully requests that the defendants be detained pending trial.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/ Sean Fern
Sean Fern
Special Assistant U.S. Attorney
(718) 254-6195

cc:   Clerk of Court (By e-mail)
Counsel of Record (By e-mail)